### TWIST v. ROANE.

#### Opinion delivered May 16, 1927.

1. JUDGMENT—RES JUDICATA.—Recovery against a contractor by the defendant for materials furnished for the house of a third person is not barred under the doctrine of *res judicata* because in a former suit by the contractor against defendants on account of constructing a house for defendants, they filed a counterclaim for value of such materials, which was withdrawn before judgment; such counterclaim being based on a different transaction.

2. MECHANICS' LIENS—LIEN OF MATERIALMAN.—One who buys materials on his own account and furnishes them to a contractor to build a house for another, even if delivered by the original seller to the contractor at his request from time to time, is entitled to a materialman's lien under the statute, and is not a mere guarantor of account.

3. MECHANICS' LIENS—TIME OF FILING LIEN.—Although materials purchased by a contractor were ordered and shipped at different

times, where they were purchased under an open and running account, the date of the last item purchased fixed the time within which the lien should be filed.

4.  SALES—AGREEMENT TO PAY CASH—REASONABLE PROFIT.—Under an agreement to furnish a contractor materials at cost for cash, the materialman was entitled to add 15 per cent. as a reasonable profit when the contractor failed to pay cash.

Appeal from Cross Chancery Court; *A. L. Hutchins,* Chancellor; reversed.

*T. E. Lines,* for appellant.

*Ogan & Shaver,* for appellee..

HUMPHREYS, J.  Appellants brought suit against appellees for $790.23, the value of materials alleged to have been furnished by them and used in the construction of a residence for M. R. Owen and Bessie Owen, on lot 1 and a part of lot 2, Eldridge Court, in the city of Wynne, and to establish and foreclose a materialman's lien on said property to pay same.

The following defenses were interposed to the suit:

First, that the amount sued for was fully adjudicated in a suit in the circuit court of Cross County between J. W. Roane and appellants herein.  Second, that materials were not purchased from the appellants herein, but were purchased from the Cole Manufacturing Company of Memphis, Tennessee, and guaranteed by appellants herein.  Third, that the purchases were made directly from the Cole Manufacturing Company in three separate and distinct contracts, and that the materialman's lien was not filed within the time required by law.

The cause was submitted to the court upon the pleadings and testimony, which resulted in a decree dismissing appellants' complaint, and the cause is before us on appeal for trial *de novo.*

Appellants were farmers operating a plantation store on their farm at Twist in said county.  M. R. Owen and Bessie Owen owned and resided on the lots in question in Wynne, and J. W. Roane was the contractor and carpenter who built the residence for them.  He entered into a contract with appellants to build them a house on

their plantation at the same time he contracted with Owen to construct his residence. Appellants were. lumber dealers in another State, and were in a position to buy materials from the Cole Manufacturing Company in Memphis at dealers' prices, so it was agreed between appellants and J. W. Roane that they would buy a part of the materials for constructing both houses on their own account. J. W. Roane furnished the estimates for the materials which they were to purchase for each house to Clarence Twist, one of the appellants, who went to Memphis and arranged for the purchase thereof. Three orders were sent in to the Cole Manufacturing Company for the materials used in the construction of the Owen residence. The first order was for doors, windows and similar stuff, amounting to about $450; the second consisted of three or four windows, and the third for a stairway. The second and third orders were made by the contractor, J. W. Roane, without the consent or knowledge of appellants, who canceled the orders as soon as they received notice that they had been made. At the solicitation of J. W. Roane, who promised to bring a check over right away to cover the cost thereof, they reinstated the order. J. W. Roane did not take them the check as he promised. All of the material which was purchased from the Cole Manufacturing Company was used in the construction of both houses and was charged to appellants and paid by them. The small order for windows was shipped last and received by J. W. Roane on March 1, 1923. J. W. Roane admitted that all of the items charged on appellants' account against him and M. R. Owen and Bessie Owen, made the basis of lien filed and this suit, were used in the construction of the Owen house. M. R. Owen testified that he moved into the house on March 1, 1923, and that all of the windows and doors were in at that time. In other words, he testified that the house was completed when he moved into it. He did not testify what hour he moved in on the first of March, so it was possible for the contractor to have placed the windows in the house on the morning

of March 1 before Owen occupied it. The small bill of windows was the last item charged on the account as of date February 27, 1923. The lien was filed on May 9, 1923, at 10 o'clock A. M.

(1). The defense of *res judicata* is not sustained by the evidence. It is true that, in the suit brought by J. W. Roane against Twist Brothers on account for constructing their home, Twist Brothers filed a counterclaim embracing the items of material furnished by them to Roane to build the Owen house, but, according to the face of the judgment rendered in that case, the counterclaim was withdrawn and the items, totaling $790.23, were stricken from the complaint and not submitted and considered. The judgment recites: "This cause coming on to be heard this 13th day of November, 1923, J. W. Roane appeared by his attorney, S. W. Ogan, and defendants by attorneys T. E. Lines and T. H. Caraway. The counterclaim of Twist Brothers for $790.23 is withdrawn, and said item is stricken from the complaint and not submitted. The remainder of the complaint and counterclaim of Clarence Twist for $431.95 went to trial, and, a jury being called, J. E. Hargis and eleven others of the regular panel, who returned into open court the following verdict: 'We, the jury, find for the plaintiff for the sum of $100. J. E. Hargis, foreman.'

"Wherefore it is by the court considered, ordered and adjudged that the counterclaim of Twist Brothers for $790.23 be and the same is hereby withdrawn, and the same is stricken from the complaint and not considered herein, and that the plaintiff, J. W. Roane, do have and recover of and from Ira F. Twist, Clarence Twist and John F. Twist, as Twist Brothers, the sum of $100 ($100) and all costs herein expended."

We do not think that Twist Brothers were compelled to present their claim against J. W. Roane in that suit, as it did not pertain to their contract with him for building their own house. It was a separate and distinct contract, and the subject of separate suits. Had it been a matter growing out of and embraced in a single con-

tract, they could not have split the action and made two out of it. They had two contracts with J. W. Roane, one to build a house for themselves and another to furnish him certain materials with which to construct a house for the Owens. The maintenance of the two suits was not therefore a splitting of a single cause of action.

(2). We think one who buys materials on his own account and furnishes them to a contractor to build a house for another, even if delivered by the original vendor directly to the contractor at his request, from time to time, is entitled to a materialman's lien under the statute, and is in no sense a mere guarantor of the account. The record reflects that Twist Brothers purchased materials amounting to $790.23 on their own account to be used by J. W. Roane in the construction of the Owen residence, and that they paid the account to Cole Manufacturing Company when requested to do so. J. W. Roane had nothing to do with the purchase of the materials from Cole Manufacturing Company further than to send in the order in Twist Brothers' name, as he needed said materials in the construction of Owen's house. The materials were not charged to Roane or Owen by the Cole Manufacturing Company or paid for by either of them. The long and short of it was that Twist Brothers purchased the materials outright from Cole Manufacturing Company and furnished them to Roane, as contractor, to be used in the construction of Owen's house.

(3). The record does not reflect that the materials were purchased under three separate contracts. The fact that they were ordered and shipped at different times does not establish that each lot was purchased under separate contract and not on an open and running account. As we read the record, the materials were ordered to be shipped at different times, but bought on open account and credit of Twist Brothers. It is true that Twist Brothers canceled the second and third order because the contractor was getting behind with them on the contract to build their own house, but, on his prom-

ise to bring them a check, they reinstated the order. Even if the materials had been purchased on separate contracts from Cole Manufacturing Company, they were furnished by Twist Brothers to the contractor on open account on a single contract to furnish materials for the construction of the Owen residence at original cost for cash. We think the decided weight of the evidence shows that the items of the account dated February 27, 1923, and delivered to the contractor on March 1, following, were used in completing the Owen residence. The offer was made to appoint an efficient man to view the house and ascertain whether the windows which were last shipped had been placed therein, and he refused to allow the inspection.This is a very strong circumstance tending to corroborate the reiterated statement of J. W. Roane that the items charged on the account were used in the construction of the house. Treating these items as the last materials furnished on open account on a single contract, the lien was filed within the time allowed by law.

The account includes a profit over the cost price of 15 per cent. The agreement was that the material should be furnished at cost for cash, so, when the contractor failed to pay cash, we think it allowable and justifiable for appellants to add a reasonable profit, and we do not think the added amount is unreasonable.

On account of the error indicated the decree is reversed, with directions to enter judgment for the amount claimed and to declare and foreclose a lien against said lots to pay same.