UNITED-BILT HOMES, INCORPORATED
*v.* Charles SAMPSON

93-384                                               864 S.W.2d 861

Supreme Court of Arkansas
Opinion delivered November 15, 1993

*C. Alan Gauldin*, for appellant.

*Mike Wilson*, for appellee.

DONALD L. CORBIN, Justice. Appellant, United-Bilt Homes, Incorporated, appeals a judgment of the Pulaski Chancery Court finding that appellant's complaint for foreclosure against appellee, Charles Sampson, was a compulsory counterclaim that should have been filed in a previous suit between the same parties. For reversal appellant relies on ARCP Rule 13(a) and (d) and asserts two points of error. We find merit to the first point of error and therefore reverse and remand.

This is the second appeal we have heard involving the same parties. In *United-Bilt Homes, Inc.* v. *Sampson*, 310 Ark. 47, 832 S.W.2d 502 (1992) *(Sampson I)*, we affirmed Sampson's judgment for compensatory and punitive damages against United-Bilt. In that case, we held that United-Bilt, who was the loss-payee on Sampson's homeowner's policy, had wrongly refused to release insurance proceeds to the contractor who repaired Sampson's home following a fire. The instant case was initiated on July 23, 1992, the day after we delivered our decision in *Sampson I*, when United-Bilt filed a complaint for foreclosure against Sampson. Sampson answered and filed a motion to dismiss claiming the foreclosure action was a compulsory counterclaim under ARCP Rule 13 which should have been asserted in *Sampson I*. After a hearing on the motion, the chancery court found the action for

foreclosure was a compulsory counterclaim which should have been brought in the previous lawsuit and granted the dismissal.

On appeal, United-Bilt asserts two reasons the chancellor's ruling was in error. First, United-Bilt argues the foreclosure action did not "arise[] out of the transaction or occurrence" litigated in the previous suit as that phrase is used in Rule 13(a). Second, United-Bilt argues that according to Rule 13(d), its cause of action did not mature until after the issues were joined because it did not exercise its option to accelerate the entire indebtedness until after it had filed its answer.

■■ Initially, we observe that issues are joined when a fact or conclusion of law is asserted in one party's pleading and is admitted or denied in the responding party's pleading. Ark. Code Ann. § 16-64-102 (1987); *Harrison* v. *Glass*, 264 Ark. 428, 572 S.W.2d 143 (1978). We also observe that a cause of action on an entire debt owed under an installment sales contract with an optional acceleration clause does not arise until the option is exercised. *Hodges* v. *Dilatush*, 199 Ark. 967, 136 S.W.2d 1018 (1940). The issues in *Sampson I* were joined on December 5, 1990, when United-Bilt filed its answer to Sampson's third-party complaint. As of that point in time, the record reveals that Sampson was at most two payments behind, but that United-Bilt had not exercised its option to accelerate the debt. Thus, we are inclined to agree with United-Bilt's second argument. However, because we conclude the trial court erred in determining the two cases arose out of the same transaction or occurrence, we need not analyze the merits of United-Bilt's second argument.

From the bench, the trial court stated its reasoning for granting the dismissal. The chancellor reasoned that the two cases arose from the mortgage and thus from the "same transaction or occurrence." In order to decide whether appellant's foreclosure action arose out of the same transaction or occurrence litigated in *Sampson I*, we must look to the facts surrounding that case. There was a fire at Sampson's home. United-Bilt was the loss-payee on Sampson's homeowner's insurance policy. Consequently, the insurance company issued a check payable to both United-Bilt and Sampson. Sampson and United-Bilt agreed the insurance proceeds would be used to repair the home. On that promise, Sampson endorsed the check and contracted with a contractor to

complete the repairs. United-Bilt held the funds in escrow, but refused to pay out approximately $12,000.00 of the funds when the repairs where finished. Sampson was unable to pay the contractor who had completed the work. The contractor sued Sampson for the balance due on the contract and Sampson impleaded United-Bilt alleging tortious interference with his contract with the contractor.

*Sampson I* involved two contracts. First, there was the contract between Sampson and the contractor who made the repairs. Second, there was the contract between Sampson and United-Bilt, whereby Sampson agreed to have the property repaired and United-Bilt agreed to use the insurance proceeds to pay for the repairs. While the relationship of mortgagor and mortgagee between Sampson and United-Bilt existed at the time of the contract regarding the insurance proceeds and was the reason the proceeds were payable to Sampson and United-Bilt jointly, neither this relationship nor the mortgage itself was at issue in *Sampson I*. To the contrary, it is precisely the mortgage and the mortgagee-mortgagor relationship that is at issue in the instant case.

Rule 13 of the Arkansas Rules of Civil Procedure provides in pertinent part:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing part, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

(b) Permissive Counterclaim. A pleading may state as a counterclaim any claim against an opposing party not

arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

■ The transaction or occurrence at issue in *Sampson I* was the disbursement of insurance proceeds for a repair contract. The execution of the mortgage and subsequent default thereof that is at issue in the instant foreclosure action is a separate "transaction or occurrence." Thus, according to Rule 13(a), the chancellor erred in dismissing the suit.

■ This court has previously held that one document may be the source of two independent claims, one of which is not necessarily a compulsory counterclaim to be asserted with the other. *Baltz* v. *Security Bank of Paragould*, 272 Ark. 302, 613 S.W.2d 833 (1981). Our holding today is consistent with *Baltz*. Moreover, as Sampson at most was two payments behind at the time the issues were joined in *Sampson I*, our holding is consistent with the principle of permitting equity courts to protect a debtor against an inequitable acceleration of the maturity of a debt. *Tucker* v. *Pulaski Fed. Sav. & Loan*, 252 Ark. 849, 481 S.W.2d 725 (1972); *Crone* v. *Johnson*, 240 Ark. 1029, 403 S.W.2d 738 (1966).

The judgment dismissing the foreclosure action is reversed and remanded for further proceedings consistent with this decision.